<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HONIX PEREZ,**  *Plaintiff,*  v.  **COMMISSIONER OF SOCIAL SECURITY,**  *Defendant.* | Civil Action No. 20-12816  **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Honix Perez's ("Plaintiff") request for review of Administrative Law Judge Leonard F. Costa's (the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED.**

**I.   STANDARD OF REVIEW AND APPLICABLE LAW**

   **A.   Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but his factual findings must be affirmed if they are supported by substantial evidence. <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Stated differently, substantial evidence

1

consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the Plaintiff and corroborated by family and neighbors; and (4) the Plaintiff's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. Appx. 167 (3d Cir. 2014).

**B. The Five-Step Disability Test**

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial

gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends, and benefits must be denied. See id.

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner, at step four, must decide if the claimant has the "residual functional capacity" ("RFC") to perform his past relevant work. 20 C.F.R. §416.920(e). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

At the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for SSI on March 22, 2017, alleging disability as of February 9, 2017. Administrative Transcript, ("Tr.") 67, ECF No. 7.[1] Plaintiff was 51 years old on the alleged disability onset date, making her an individual closely approaching advanced age. Tr. 66. Her claims were initially denied on June 23, 2017, Tr. 111-15, and upon reconsideration on September 11, 2017 after Plaintiff alleged increased breathing difficulties, Tr. 120-22.

On October 18, 2017, Plaintiff requested that an Administrative Law Judge ("ALJ") review her claims. Tr. 124-26. Plaintiff thereafter appeared at a hearing before ALJ Leonard F. Costa on April 12, 2019 in Newark, New Jersey. Tr. 35-66. Plaintiff was represented by counsel at the hearing, and a vocational expert testified. Tr. 35; 60-65. On June 17, 2019, the ALJ issued his decision, concluding that Plaintiff was not disabled within the meaning of the Act. Tr. 21-29.

Plaintiff requested Appeals Council review, which was denied on July 17, 2020 and the Appeals Council affirmed Judge Costa's decision. Tr. 1-3. This Action followed. Plaintiff filed her Complaint in this Court on September 18, 2020. ECF No. 1.

### B. Background & Medical History

Plaintiff alleges disability due to several physical and mental impairments, including: sinusitis, asthma, high blood pressure, diabetes, and high cholesterol. Tr. 67. Plaintiff has a high-school education. Tr. 44. Plaintiff has not engaged in substantial gainful activity since the application date, but previously worked as a cashier. Tr. 365. Plaintiff is unable to drive due to pain in her ankle, but lives with her daughter, aged 31, who drives her to medical appointments. Tr. 8.

---

[1] Plaintiff also previously applied for SSI benefits in 2010 and 2016, but it was determined she was not disabled. Tr. 86-94, 264-65.

4

On August 16, 2016, as part of an earlier application for benefits, Francky Merlin, M.D., evaluated Plaintiff at a consultative examination. Tr. 365-87. Dr. Merlin reviewed Plaintiff's history of high blood pressure, diabetes and asthma, and noted pain in her right ankle after surgery. Tr. 365. With respect to her ankle, Dr. Merlin noted Plaintiff's gait was antalgic, and she had no difficulty getting on and of the examination table. Tr. 366. Although he noted tenderness in her right ankle, the range of motion was normal. Id. Plaintiff reported that she used a cane, was able to walk half a block with the cane, but in the house without it. Id. Further, Plaintiff reported she was able to take care of her personal hygiene and help with household chores. Tr. 365.

Dr. Merlin performed pulmonary function tests, which revealed forced expiratory volume ("FEV1") values between 1.82 L to 1.73 L, depending on the level of bronchodilation.[2] Tr. 375-87. Dr. Merlin also ordered right ankle x-rays, which revealed a metallic plate in place with prior healed fracture of the distal right fibula. Tr. 388. The x-rays were reviewed by Stephen Toder, M.D., who opined that Plaintiff's right ankle "joint [wa]s maintained and there [wa]s no soft tissue swelling," and that Plaintiff's right foot showed a "mild hallux vagus deformity," but the "joint spaces [we]re otherwise maintained." Tr. 387. Dr. Merlin ultimately diagnosed Plaintiff with hypertension, diabetes mellitus and asthma. Tr. 367.

Alan Plauka, M.D., part of New Jersey Medcare ("NJM"), who Plaintiff had seen several times previously, also evaluated Plaintiff on March 3, 2017. Tr. 406-412. Dr. Plauka noted Plaintiff's continued foot pain, and stated that Plaintiff complained of carpal tunnel but failed to use her wrist brace regularly. Tr. 408. Dr. Plauka advised Plaintiff to increase insulin units and prescribed Jardiance and other diabetes drugs. Tr. 411. He also stated that Plaintiff's hypertension and blood pressure were stable, and referred her to gastroenterology for abdominal pain. Tr. 412.

---

[2] To meet the Listing requirements for asthma, Listing 3.03 requires FEV1 for a female aged 20 years or older, measuring 64 inches tall, to be less than or equal to 1.65.

Dr. Plauka further advised her to keep records of her blood sugar levels, and prescribed her Augmentin for sinusitis. Tr. 413. When Plaintiff returned to Dr. Plauka on April 4, 2017, he noted Plaintiff was in no acute distress, and her lungs were clear. Tr. 481. He noted again her history of abdominal pain, but stated her blood pressure was normal. Tr. 482.

On July 19, 2017, Plaintiff visited Dr. Vipin Garg, M.D., a pulmonologist and sleep medicine specialist. Dr. Garg noted that Plaintiff presented "mild persistent asthma" that "worsened with exertion/activity," and was associated with an occasional cough. Tr 625-26. Dr. Garg performed a chest and lung exam and opinioned that Plaintiff had no ronchi or rales, but a "small airways obstructive defect." Tr. 27-32.

On August 17, 2017, upon request from the Commissioner, Patricia McCormack, M.D., submitted a General Medical Report after one appointment with Plaintiff. Tr. 635-37. Plaintiff presented with eczema on her hand, but Dr. McCormick opined that Plaintiff had no limitations on her ability to lift or carry, stand or walk, or push or pull. Tr. 636. Dr. McCormack noted she did not find any other conditions that limited Plaintiff's ability to work. Id.

Plaintiff attended several follow-up visits with Dr. Plauka from May to December 2018, where she continued to present with high glucose levels. Tr. 864-89. In May 2018, Dr. Plauka noted that Plaintiff suffered from "a problem with her asthma" that sent her to the emergency room several weeks prior.[3] Tr. 683. Dr. Plauka refilled her inhalers because she was not using them at the time of the visit. Id.; Tr. 688. He also noted that she exhibited an "occasional slight wheeze," and was experiencing headaches, but had no blurred vision and was in no acute distress. Tr. 687-88. At a June 2018 visit, Plaintiff presented with acute back pain, and Dr. Plauka noted that she had lung nodules that required a CAT scan. Tr. 680. At that same visit, Dr. Plauka noted that

---

[3] The medical records from that emergency room visit are not part of the Administrative Transcript.

6

Plaintiff had not been compliant with her diabetes medication and suggested proceeding with a medicine that contained a "longer half-life," as it might provide "better control" for her diabetes. Id.  In August 2018, Dr. Plauka also noted that Plaintiff's pulmonary nodule was stable, but her diabetes was "very elevated" and advised her to increase her medication.  Tr. 672.

In November 2018, Plaintiff underwent x-rays on her hands due to chronic arthritis pain, but Erin Carney, M.D., noted no fracture or dislocation, and stated that the "joint spaces were maintained," and soft tissue was "within normal limits."  Tr. 641.  In December 2018, Dr. Plauka noted that a July 2017 mammogram showed abnormal results, Tr. 645-46, and Plaintiff had a family history of breast cancer.  Tr. 655.  He had therefore previously ordered a diagnostic follow-up "on several occasions," but Plaintiff had not yet complied, so he again advised her to complete a follow-up mammogram.  Id.  Dr. Plauka again reported, however, that Plaintiff was in "no acute distress" and noted that Plaintiff was noncompliant her diabetes medications.  Id.  Dr. Plauka changed her diabetes medication regimen, prescribing insulin only once a day, and sent her for an abdominal sonogram for her abdominal pain.  Id.

**C. Hearing Testimony**

At the hearing, Plaintiff testified that she fractured her ankle in 2013, which required surgery and implantation of screws.  Tr. 47.  Plaintiff stated she is unable to stand for longer than 10 or 15 minutes after the surgery as she experiences constant pain and limps when she walks.  Tr. 48.  After visiting her doctor post-surgery, the doctor determined Plaintiff needed a second surgery to remove the screws, but Plaintiff has yet to undergo that surgery as she feels apprehensive.  Tr. 49.  She testified that she uses a cane to walk, but did not bring the cane to the hearing.  Tr. 56.  When she goes to the grocery store with her daughter, she stated that she uses a motorized cart because it hurts her ankle and her feet to walk around.  Tr. 58.

Plaintiff further testified that when she tries to clean the house, she wheezes and coughs and has to use her nebulizer. Tr. 57. She stated that she is able to cook, however. Id. In her function report, Plaintiff similarly stated that she is able to make light meals, but her daughter occasionally helps to cook dinner. Tr. 287.

Plaintiff also testified with respect to her diabetes, and stated that she uses insulin three times a day. Tr. 50. Her sugar, however, remains high and she testified that she feels tingling throughout her body and has blurred vision. Tr. 51-52. In addition, Plaintiff spoke about her asthma, for which she stated she takes pills and uses a machine three times a day. Tr. 53. Plaintiff testified that she is unable to walk a block before feeling short of breath. Tr. 54. She also noted that she went to the hospital three times in the past year to receive a shot if she suffers an asthma attack. Tr. 55.

A Vocational Expert also testified at the hearing. Tr. 60. The ALJ posed the hypothetical of a person with Plaintiff's age, education, and work experience, who could perform light exertional work, including standing for 6 hours in a typical 8-hour day, but could only do so for 30 minutes at a time before needing to sit for 2-3 minutes while on task. Tr. 60-62. Further, the individual could only occasionally climb ramps and stairs, stoop, kneel, crouch, balance, or crawl, but could never climb ladders, ropes or scaffolds, and could only occasionally push or pull controls with the lower right extremity. Id. The individual could not have exposure to extremes in environmental conditions or concentrated pulmonary irritants, and could frequently handle and finger objects. Id. The Vocational Expert testified that such an individual could perform the representative unskilled jobs with a light exertional level of photocopy machine operator, furniture rental consultant, and tanning salon attendant. Tr. 61-62.

**D. ALJ Decision**

The ALJ determined that Plaintiff was not disabled under the five-step framework. At step one, Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Tr. 23. At step two, the ALJ concluded that Plaintiff's carpal tunnel syndrome, asthma, ankle fracture, arthritis and diabetes were severe, and significantly limited the ability to perform basic work activities. Id. The ALJ classified Plaintiff's hypertension as non-severe, however, as it had not caused "more than minimal limitation in [Plaintiff's] ability to perform basic work activities for 12 consecutive months." Id.

At step three, the ALJ found that none of the impairments individually or collectively met or medically equaled the severity of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpart P, Appendix 1 that was in effect on the date of the ALJ's decision. Tr. 24. With respect to Plaintiff's ankle fracture, the ALJ determined that the record did not establish "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint," and therefore the impairment did not meet the requirements under Listing 1.02, major dysfunction of a joint, of the Listing of Impairments.[4] Id. The ALJ also found that Plaintiff's ankle impairment did not meet the severity of Listing 1.06, fracture of the femur,

---

[4] At the time of the ALJ's decision in June 2019, the Appendix defined Listing 1.02, major dysfunction of a joint (due to any cause), as "[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," combined with either "[i]nvolvement of one major peripheral weight-bearing joint (i.e ., hip, knee, or ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b," or "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. Part 404, Subpt. p., Appx. 1, § 1.02. The regulations have now changed, and these specific Listings no longer exist.

tibia, pelvis, or one or more of the tarsal bones.[5]  Id.  Finally, the ALJ concluded that Plaintiff's asthma did not meet the severity of Listing 3.03.[6]  Id.

At step four, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 416.967(b).  Tr. 24.  Specifically, the ALJ explained that Plaintiff "can stand for a total of 6 hours in a typical 8[-]hour day, but only for 1/2 hour at a time before needing to sit for 2-3 minutes while on task. She can occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, balance or crawl; and never climb ladders. She can have occasional push/pull of controls with the lower right extremities but no exposure to extremes in environmental conditions or concentrated pulmonary irritants. She can frequently handle and finger objects."  Id.  In reaching these conclusions, the ALJ noted that he considered Plaintiff's symptoms, her testimony, the objective medical evidence, and opinion evidence in accordance with 20 CFR 416.927 and 20 CFE 416.929.  Tr. 24-25.  The ALJ determined, however, that Plaintiff's statements regarding the intensity, persistence, and limiting effects" of her symptoms, were "not entirely consistent with the medical evidence and other evidence in the record."  Tr. 25.

At step five, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of photocopy machine operator, furniture rental consultant, and tanning salon attendant.  Tr. 28.  The ALJ found that Plaintiff's exertional limitations allowed her to perform light work under Medical-Vocational Rule 202.13, but because her ability "to perform all or substantially all of the

---

[5] Listing 1.06 has similarly been removed from the list of impairments, but it was defined in the regulations as " 1.06 [f]racture of the femur, tibia, pelvis, or one or more of the tarsal bones [w]ith" "[s]olid union not evident on appropriate medically acceptable imaging and not clinically solid," and "[i]nability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset."  20 C.F.R. Part 404, Subpt. p., Appx. 1, § 1.06.

[6] Listing 3.03 is currently, and was at the time of the ALJ's decision, defined as FEV1 measured in accordance with the claimant's "age, gender, and height."  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 3.03.

10

requirements of this level of work was impeded by additional limitations," he relied on the testimony of the Vocational Expert in order to determine appropriate jobs. Tr. 28. The ALJ also considered Plaintiff's high-school education and ability to communicate in English, and noted that transferability of job skills was not an issue because Plaintiff did not have past relevant work. Tr. 27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 29.

### III. ANALYSIS

Plaintiff argues that the ALJ's conclusion as to Plaintiff's RFC was "untethered to and unsupported by the substantial evidence of the record," and the ALJ failed to thoroughly explain how he reached Plaintiff's residual functional capacity (RFC). Specifically, Plaintiff contends the ALJ failed to explain how he arrived at the conclusion that Plaintiff could stand and walk 6 hours every workday, "notwithstanding the pathologies to both lower extremities," and did not specify what evidence he relied upon to suggest Plaintiff could hypothetically work a job that allowed sitting for 2-3 minutes every half hour. Pl. Br. 18. Further, Plaintiff maintains the ALJ did not explain why her carpal tunnel allowed her to "frequently handle and finger objects," nor how he determined avoiding "extremes in environmental conditions" would be sufficient to accommodate Plaintiff's asthma. Pl Br. 19. Finally, Plaintiff argues the ALJ did not provide a work-related limitation to accommodate Plaintiff's insulin-dependent diabetes. Id. For the reasons explained below, the Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations, 20 C.F.R. § 404.1545(a)(1), and the ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the

11

ultimate disability and RFC determinations."). In determining a plaintiff's RFC, the ALJ must make "a complete assessment of the claimant's physical and mental functional limitations based on relevant medical and nonmedical evidence of a claimant's impairments." Harris v. Comm'r of Soc. Sec., No. 11-2961, 2012 WL 4504486, at *7 (D.N.J. Sept. 27, 2012); 20 C.F.R. § 416.945(a)(2). The ALJ "need only include in the RFC those limitations which he finds to be credible," however, Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007), and "[a] claimant's RFC should adequately reflect his or her 'credibly established limitations,' especially when later used as the basis for a vocational expert hypothetical." Sudler v. Commissioner of Social Security, 827 F. App'x 241, 245 (3d Cir. 2020).

Given this discretion, the ALJ must explain what evidence he chooses to credit and to what extent, and what evidence he does not credit and why. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981) (stating that the ALJ must provide "an expression of the evidence s/he considered which supports the result, but also some indication of the evidence that was rejected"); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999) ("[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects"). "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC." Salles, 229 F. App'x at 147. The ALJ may not, however, "reject evidence of a limitation for an unsupported reason," Zirnsak v. Colvin, 777 F.3d 607, 615 (3d Cir. 2014), and he "'is not free to employ his/her own expertise against that of a physician who presents competent medical evidence.'" Yensick v Barnhart, 245 F. App'x 176, 181 (3d Cir. 2007) (quoting Plummer, 186 F.3d at 429).

In evaluating whether substantial evidence supports the ALJ's findings, "leniency [should] be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it [should] be strictly construed . . . ." Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir.1979)

12

(internal quotation marks omitted). Here, the Court is satisfied the ALJ provided a comprehensive analysis of each of the medically determinable impairments from which Plaintiff suffered, and explained his reasoning behind crediting certain evidence. Tr. 21-29. The ALJ's analysis was further supported by extensive citations to the objective medical evidence within the Administrative Transcript, and complied with the requirement that an RFC determination be accompanied by "specific references to evidence of record in support of assessed limitations." 20 CFR 404.1545.

First, the ALJ reviewed the relevant medical and nonmedical evidence, and found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 25. The ALJ reviewed Plaintiff's physical impairments, including her right ankle fracture from 2013, and noted Plaintiff's testimony that she could stand for ten to fifteen minutes, but did not have any problems sitting. Tr. 25. The ALJ found that the objective medical evidence did not support Plaintiff's claim that she could only walk half a block with her cane. Id. In so stating, the ALJ cited to the October 2018 medical report from Dr. Plauka which stated that Plaintiff's musculoskeletal exam was "normal, with "no joint pains or flaccidity." Tr. 663. The ALJ also cited to records of Plaintiff's visit to Dr. Merlin, which noted that her "range of motion of the right ankle was normal," despite tenderness. Tr. 26; see also Arroyo v. Comm'r of Soc. Sec., 82 F. App'x 765, 768 (3d Cir. 2003) ("While an ALJ should consider an applicant's subjective complaints, . . . the applicant bears the burden of producing medical evidence to support those complaints.") (internal citation omitted)).

The ALJ's opinion further noted that Plaintiff was able to walk in Dr. Merlin's examination room and get herself on and off the table. Tr. 26. In addition, the ALJ noted that Dr. Plauka

reported Plaintiff's range of motion and muscle power was grossly intact in all extremities at the March 3, 2017 appointment, and he referred her to podiatry. Tr. 26. However, the ALJ pointed out that there were no podiatry records in the file and Plaintiff's "subsequent physical examinations have been generally normal." Id. The Court is satisfied that the ALJ's finding with respect to Plaintiff's ankle is adequately supported, as none of the medical evidence in the record suggested that Plaintiff's ankle injury was so severe as to equal the "gross anatomical deformity" required by Listing 1.02. 20 C.F.R. Part 404, Subpt. p., Appx. 1, § 1.02;

Plaintiff also maintains the ALJ failed to address her carpal tunnel syndrome. However, the ALJ noted that Plaintiff did not use her hand brace regularly, and x-rays done in 2018 to assess Plaintiff's arthritis on both hands were normal. Tr. 27. In support, the ALJ cited to the November 2018 x-rays completed by Dr. Carney, Tr. 640-21, as well as Dr. Plauka's report from March 3, 2017 stating that Plaintiff had a "wrist brace for the carpal tunnel but has not been using it regularly recently." Tr. 207. The ALJ also referenced Plaintiff's examination by Dr. Merlin which noted that her "reflexes and motor strength were normal," and her "grasping strength and manipulative functions were not impaired." Tr. 26. Plaintiff did not testify at the hearing that this condition affected her ability to work or perform daily tasks. On this record, there was substantial evidence for the ALJ to conclude that Plaintiff's carpal tunnel syndrome had no impact her RFC and she could "frequently handle and finger objects." Tr. 61.

With respect to Plaintiff's asthma, the ALJ relied upon extensive objective medical evidence in determining that Plaintiff's asthma did not meet, medically equal, or functionally equal the Listings. The opinion provided a detailed discussion of Plaintiff's pulmonary function tests, which revealed "FEV1 predicted 2.81 L, observed before bronchodilation 1.82 L or 65%, observed after bronchodilation 1.76 L or 61%." Tr. 368-387. As noted above, Listing 3.03 requires a FEV1,

14

for a woman measuring 64 inches tall, of less than or equal to 1.65 L.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 3.03.  The ALJ further highlighted Plaintiff's appointment with Dr. Garg where she was diagnosed with "mild persistent asthma without complication and dyspnea," but also noted Dr. Garg's report that Plaintiff had not been compliant with previously prescribed treatment.  Tr. 26; Tr. 627.  The ALJ also cited to the appointment with Dr. Plauka where "it was noted that [Plaintiff] was not using any of her inhalers."  Tr. 26; Tr. 683.

As to Plaintiff's diabetes, the ALJ discussed Plaintiff's high glucose levels and the various treatments Plaintiff was prescribed.  Tr. 25-26.  Relying on Dr. Plauka's records from May 2018, the ALJ specifically noted that Plaintiff "was taking diabetic pills though she was on Glipizide and did not take Jardiance because she was afraid of side effects she saw on television."  Tr. 26; Tr. 683.  Further, the ALJ acknowledged Plaintiff's elevated AIc levels, but stated Dr. Plauka changed her insulin regimen to once a day in December 218.  Tr. 26.  The ALJ also highlighted that Plaintiff had failed to report for recommended diabetes testing several times, and was noncompliant with medications and record keeping.  Tr. 26 (Plaintiff "had not undergone the blood test ordered for her diabetes evaluation . . . . She was again ordered for laboratory testing and referred to endocrinology . . . . "[I]n June 2018, it was noted that she had not gone for testing and also had been non-compliant with her diabetes treatment.").

The ALJ also provided clear reasoning as to why he credited or discredited each piece of medical opinion evidence.  Tr. 27.  The ALJ explained why he did not credit the report of Dr. Patricia McCormack, who completed a general medical report in August 2017, and opinioned that Plaintiff had no limitations.  See Tr. 635-37.  The ALJ afforded this opinion little weight because Dr. McCormack treated Plaintiff once and did not provide sufficient explanation for her diagnosis.  Tr. 27.

The ALJ further noted that he gave little weight to the opinions of Disability Determination Services (DDS) consultants, who opined that Plaintiff's impairments were non-severe. Tr. 27; Tr. 66-81. Because theses consultants did not have the opportunity to examine Plaintiff or review evidence received after the file was complete, including Plaintiff's testimony, the ALJ found that these opinions should not be credited, and Plaintiff's impairments were in fact severe. Tr. 27.

Finally, the ALJ afforded partial credit to Dr. Merlin's opinion that Plaintiff could sit, stand, walk, crouch, hear and speak, because it was based upon personal examination and was partially consistent with the objective medical evidence. Tr. 27. The ALJ noted that Dr. Merlin reported no reduced range of motion and an ability to walk half a block with her cane, but other than Plaintiff's report that she was limited to half a block, the objective medical evidence did not support such a finding, as Plaintiff's musculoskeletal exams in the record showed "generally normal" results with "no extremity complaints." Tr. 27.

In addition, although the medical opinions assigned Plaintiff no limitations, the ALJ thoroughly evaluated the credible medical evidence to find that Plaintiff was actually more limited than many of the physicians had opined, and determined that she had certain limitations that required only light exertional work. Tr. 28. On this basis, the Court cannot say that the ALJ's findings were conclusory. Instead, they were supported by objective medical evidence in the record, and they meet the standard for substantial evidence, which does not require a preponderance. McCrea, 370 F.3d at 360. The ALJ's opinion contains sufficient evidence for a reasonable mind to "accept [it] as adequate," Ventura, 55 F.3d at 901, and the Court is therefore satisfied the RFC determination was not harmful legal error.

### III.     CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.

Date: December 19th, 2022                      **/s/ Madeline Cox Arleo**
                                                          **Hon. Madeline Cox Arleo**
                                                          **UNITED STATES DISTRICT JUDGE**